**REVISED September 24, 2014**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

September 19, 2014

Lyle W. Cayce
Clerk

No. 14-30887

In re: GLAY H. COLLIER, II

Petitioner.

Petition for a Writ of Mandamus from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CV-01670

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:[*]

Glay H. Collier, II ("Collier"), a Louisiana licensed attorney practicing consumer bankruptcy law, filed this petition for a writ of mandamus challenging the district court's imposition of a forty-eight hour jail sentence for his civil contempt of court. After this emergency mandamus petition was filed, we stayed the execution of the sentence pending our review on the merits. We now GRANT Collier's petition and issue a Writ of Mandamus VACATING the district court's order.

I.

The order in question arises out of an action that was pending in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30887

Western District of Louisiana, *Wheeler v. Collier*.[1]   In that case, a client ("Wheeler") sued Collier, along with his law partner and law firm, for mishandling client funds in violation of 11 U.S.C. § 362(a) and § 524.

Wheeler moved for summary judgment. On May 22, 2014, the district court granted summary judgment in favor of Wheeler on the merits of the § 362 claim. Regarding the § 524 claim, the court held that it had the power to punish a violation of § 524 under 11 U.S.C. § 105.[2] The court deferred deciding the merits of the § 524 claim in order to hold a hearing.

The court held that hearing on July 14, 2014. The court entered a contempt order under § 105, finding that Collier violated § 524.  The district court imposed fines and ordered Collier to cease all advertising for "no money down" Chapter 7 bankruptcy legal services. The court set a deadline of July 21, 2014 for Collier to stop all advertisements for these services.

On July 23, 2014, the district court ordered Collier to "show cause as to why he should not be held in *civil* contempt, including fines and confinement, for violating [the] court's [July 14th] [o]rder" requiring him to stop the advertisements.[3] The hearing was set for July 28, 2014.

At the July 28th hearing, Collier appeared with counsel. Testimony was produced that revealed that Collier had stopped all television advertisements by the July 21st deadline.  However, five different websites, which included twenty-eight individual advertisements within those pages, were active after the deadline. Three of the websites were taken down on July 23, 2014.  The

---

[1] U.S.D.C. No. 5:11-cv-01670.

[2] The parties agreed that § 524 did not provide a private cause of action. 11 U.S.C. § 105 states in pertinent part, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[3] (emphasis added).

2

No. 14-30887

advertisements on the other two websites, which allegedly violated the court's July 14th order, remained in place through the morning of the hearing. Collier was successful in stopping one of the advertisements during the hearing. He was unable, however, to stop the last advertisement by the time the hearing concluded. Collier, through counsel, informed the court that he had taken all available steps to cease the final advertisement. First, Collier had his advertising agency call a representative of the website and request the advertisement be removed. A representative of Collier's advertising agency testified that the website representative informed him it usually takes between twenty-four and forty-eight hours to remove an advertisement from the website. Additionally, Collier's attorney stated in open court that he and Collier spoke with a representative of the website and requested the advertisement be removed.

At the conclusion of the hearing, the district court ruled:

> After deliberation and consideration of the number of violations, as well as the defendant's direct disregard for the authority of the Court and its July 14, 2014 order mandating that the parties McBride & Collier and Glay H. Collier, II, were held in contempt of court under Section 105 in the *Wheeler versus Collier* matter, the Court further directed the defendants to remove all advertisements of Chapter 7 No Money Down consumer bankruptcies.
>
> As a result of the violation of this Court's order, without any reasonable excuse other than "I forgot," Glay H. Collier is hereby ordered into the custody of the U.S. Marshal Service for a period of 48 hours for the violations of this Court's previous contempt order regarding the removal of advertising of Chapter 7 consumer bankruptcy under the heading of No Money Down.

The district court then remanded Collier to the custody of the U.S. Marshal to

3

begin service of his sentence. This emergency petition for a writ of mandamus followed, seeking review of this order.[4]

## II.

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."[5]  The writ is appropriately issued when there is a clear abuse of discretion or judicial usurpation by the court against which mandamus is sought.[6]

## III.

Collier argues that the issuance of the writ is proper in this case, because the district court imposed a criminal sentence without providing the proper procedural protections. It is clear, argues Collier, that the contempt order was criminal in nature and not civil.  Collier points out that the district court explicitly noted the hearing was for civil contempt in its July 23rd order and on the record during the hearing, but then the district court levied a punitive fixed term of imprisonment which is ordinarily only proper for criminal contempt.

Before a writ of mandamus can be issued, three conditions must be satisfied.[7]  First, the petitioner "must have no other adequate means to attain the relief he desires . . . ."[8]  Second, the petitioner "[must] satisfy the burden of showing that his right to issuance of the writ is clear and undisputable."[9]  Finally, ". . . the issuing court, in the exercise of its discretion, must be satisfied

---

[4] Collier seeks review of a separate part of this order through another petition for a writ of mandamus filed on September 9, 2014, No. 14-31048.

[5] *In re Times Picayune, L.L.C.*, 561 F. App'x 402, 402 (5th Cir. 2014) (quoting *Kerr v. U.S. Dist. Court,* 426 U.S. 394, 402 (1976)).

[6] *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).

[7] *Id.*

[8] *Id.* (alteration in original).

[9] *Id.* at 381 (alterations and internal quotation marks omitted).

that the writ is appropriate under the circumstances."[10]

As to the first condition, we are satisfied that Collier has no other adequate means to attain the relief he seeks. As indicated, Collier was remanded to the custody of the U.S. Marshal following the hearing to serve his sentence. Due to the nature of the forty-eight hour jail sentence and the obvious time restrictions to obtain relief, Collier "has no other adequate means to attain the relief he desires."

Next, Collier must show that his right to issuance of the writ is "clear and undisputable." Under the *Cheney* standard, "If the district court clearly abused its discretion . . . [in imposing an unconditional forty-eight hour prison sentence for civil contempt,] then [Collier's] right to issuance of the writ is necessarily clear and indisputable."[11] To determine whether the district court clearly abused its discretion in its order, we must first consider whether the contempt proceeding and the punishment imposed was civil or criminal in nature.

Contempt is characterized as either civil or criminal depending upon its "primary purpose."[12]

> If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil. Imprisonment is an appropriate remedy for either civil or criminal contempt, depending on how it is assessed. If the prison term is conditional and coercive, the character of the contempt is civil; if it is backward-looking and unconditional it is criminal.[13]

---

[10] *Id.*

[11] *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

[12] *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009).

[13] *Id.* (internal citations omitted).

While a court's characterization of its proceedings is a factor to be considered in determining the type of contempt, it is not conclusive.[14]

Determining the difference between criminal and civil contempt is crucial because the law provides heightened protections for punitive criminal contempt.[15] Governed by Federal Rule of Criminal Procedure 42, criminal contempt must be accompanied with notice to the contemnor either in open court, an order to show cause, or an arrest warrant.[16] This notice must "state the time and place of the trial, allow the defendant reasonable time to prepare a defense, and state the essential facts constituting the charged criminal contempt and *describe it as such*."[17] The rule also requires the contempt citation be prosecuted by an attorney for the government, or another attorney.[18] Finally, the contemnor is entitled to a jury trial in any case where federal law so provides.[19] In addition to procedural differences, there are evidentiary differences. "[C]ivil contempt orders must satisfy the clear and convincing evidence standard, while criminal contempt orders must be established beyond a reasonable doubt."[20]

In the present case, the district court, in its order for Collier to show cause, identified the hearing as "civil contempt." Additionally, the hearing transcript reflects two separate occasions where the district court judge orally confirmed the hearing was a civil contempt proceeding.

Notwithstanding the district court's own characterization, it is clear to

---

[14] *Lewis v. S.S. Baune,* 534 F.2d 1115, 1119 (5th Cir. 1976).

[15] *United States v. Puente,* 558 F. App'x 338, 341 (5th Cir. 2013) (per curiam).

[16] Fed. R. Crim. P. 42(a)(1).

[17] *Id.* (emphasis added).

[18] *Id.*

[19] *Id.*; Rule 42(b)—which provides for summary disposition if contempt is committed in the judge's presence—does not apply here.

[20] *Puente*, 558 F. App'x at 341 (internal citation omitted).

us that the proceeding and sanction should be characterized as criminal rather than civil. First, the sanction was for an unconditional term of imprisonment. This amounts to a punitive sanction for past violations of the order, not to coerce Collier into compliance.  Second, the evidence presented at the hearing does not show that Collier could have taken additional steps to comply with the court's order by the time he was remanded into custody.  He had all advertisements removed except one, and the termination of the final advertisement was "just a matter of time."  Even the court acknowledged that removal of the final advertisement was "in progress."  Third, in its reasoning, the district court cited "the violation" of the court's order (not the continued non-compliance) as the basis for its finding of civil contempt.  Finally, even if the district court could have found beyond a reasonable doubt that Collier willfully violated the court's order, there is no indication in the record that the district judge made that determination or that he weighed the evidence against that heightened standard.

As a result, we are satisfied that the primary purpose of the contempt order was to punish the contemnor and vindicate the authority of the court. The contempt order is criminal in nature. Because the district court failed to provide the proper procedural protections, Collier has shown that his right to the issuance of the writ is clear and undisputable.

Finally, in order for us to issue this extraordinary remedy, we must be satisfied that the writ is appropriate under the circumstances.  Given that Collier's liberty was taken away without the benefit of the procedural protections provided by law, and due to the immediacy of the punishment, we are satisfied that the writ must be issued in this case.

## IV.

The district court clearly abused its discretion when it held Collier in

No. 14-30887

criminal contempt without providing him the procedural protections required by law. We, therefore, GRANT Collier's petition and issue a Writ of Mandamus VACATING the district court's July 28, 2014 order finding Collier in contempt and imposing a forty-eight hour jail sentence. We leave to the district court entry of any further order necessary to effectuate our ruling.